FILED

08 JUL -3 AM 11: 33

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA



(PR)

MHP

1  **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983**

2  Name _WARReN_ _____ _Lee_ _____
       (Last)          (First)          (Initial)

4  Prisoner Number _Edgar Lee WARReN_

5  Institutional Address _35 County CenteR DR. OROville, ca 95965_

7  ## UNITED STATES DISTRICT COURT
   ## NORTHERN DISTRICT OF CALIFORNIA

8  _Edgar Lee WARReN_        **CV 08-filings 3207**
   (Enter the full name of plaintiff in this action.)

10            vs.                  Case No. _____
                                   (To be provided by the Clerk of Court)
11  _Butte. County Jail_
                                   **COMPLAINT UNDER THE**
12  _Sergeant BROWFIELD_           **CIVIL RIGHTS ACT,**
                                   **Title 42 U.S.C § 1983**
13  _Sergeant COOLeY_

14  _OFFiceR THORNTON_
   (Enter the full name of the defendant(s) in this action)

16  *[All questions on this complaint form must be answered in order for your action to proceed..]*

17  I.    Exhaustion of Administrative Remedies.

18        [Note: You must exhaust your administrative remedies before your claim can go

19        forward. The court will dismiss any unexhausted claims.]

20        A.    Place of present confinement _Edgar Lee WARReN_

21        B.    Is there a grievance procedure in this institution?

22                    YES ( )      NO (X)

23        C.    Did you present the facts in your complaint for review through the grievance

24              procedure?

25                    YES ( )      NO (X)

26        D.    If your answer is YES, list the appeal number and the date and result of the

27              appeal at each level of review. If you did not pursue a certain level of appeal,

28              explain why.

COMPLAINT                              - 1 -

1   1.  Informal appeal _N/N_ _____

2   _____

3   _____

4   2.  First formal level _N/N_ _____

5   _____

6   _____

7   3.  Second formal level _N/N_ _____

8   _____

9   _____

10  4.  Third formal level _N/N_ _____

11  _____

12  _____

13  E.   Is the last level to which you appealed the highest level of appeal available to

14       you?

15            YES ( )      NO (X)

16  F.   If you did not present your claim for review through the grievance procedure,

17  explain why. _State Don't go by Law  Are The_

18  _Rule book that have here In Butte_

19  _County Jail_

20  II.  Parties.

21  A.   Write your name and your present address. Do the same for additional plaintiffs,

22       if any.

23  _Edgar Lee Warren 35 County Center Dr Oroville, CA_

24  _95965# Butte County Jail, Sergeant Brownfield_

25  _Sergeant Cooley and Officer Thornton same_
    _35 County Center Dr. Oroville, CA 95965#_

26  B.   Write the full name of each defendant, his or her official position, and his or her

27       place of employment.

28  _____

COMPLAINT                    - 2 -

Page 1

1  Edgar Lee WARREN and MR. JESUS Rodriquez
2  attORNEY FOR WARREN Butte COUNtY COURt
3  howevER MR. WARREN and MR. Rodriquez IS
4  WItNesses that This seRgeaNt BROWNField
5  When WARREN attORNEY MR. Rodriquez
6  came up To see WARREN ON A attORNEY
7  Vis't-2-time MR. Rodriuez came up
8  and WARREN Was not let out OF his cell
9  into his couRt OF attORNEY Left hede
10  and This seRgeaNt BROWNField WAS
11  WORK-B-Pod Them days WHeRe WARREN
12  IS at howevER Edgar Lee WARREN IS A
13  WItNesses ON This OFFiceR THONTON
14  To abolt The -3-big Legal ENbeLope
15  that The Federal couRt This got To oF
16  Them and that The FedeRal couRt Did act
17  numbeR-3-big Legal ENbeLope with
18  WARREN MOtiON FOR APPINtMEt oF
19  COUNSEL and WARREN IS A WItNesses
20  To This oFFiceR THORNTON said that
21  all-OF Them-3-Big Legal ENbeLope
22  made not get To The Federal couRt
23  howevER Butte couNtY Jail be going in
24  Edgar Lee WARREN Local Mail and Read it
25  and sometime Butte couNtY Jail Keep
26  it and all so Butte couNtY Jail With hold
27  WARREN Legal Mail and Butte couNtY
28  Jail do The same To WARREN mail

Page 2

1  and so on and so on however sergeant
2  cooley know about The one time He
3  was work-B-Pod that they let some
4  inmates out of they cells for my
5  life can be take and This is The
6  same sergeant cooley did like warren
7  going To court with write women so
8  cooley take warren To court with out
9  any write women with us for warren
10 want have any thing To say To Them
11 are for Them write women want
12 have any thing To say To warren there
13 for Edgar Lee warren I a witnesses
14 all This here however Butte county Jail
15 went in that Legal mail and take out
16 prisoners application To proceed in
17 forma phuperls and take out The
18 Letters that warren had in there and
19 Butte county Jail take out Legal Pages
20 because at time Law library did not let
21 warren get any copys of his Legal work
22 and Butte county Jail take Their Legal Kikes out
23 of The big Enbelope however warren
24 is asking The Federal court To Put This Legal
25 Lawsuit through Federal court and warren
26 is asking that To Put sergeant Brownfield in
27 Federal Jail for violated and they captain here
28 at Butte county Jail is let all This go on and on
   I Declare under Penalty of Perjury that The
   Forgoing is true and correct. (Plaintiff's signature)
   Date June 23-2008            Edgar Lee Warren

Page 3

1    Edgar Lee WARREN is asking The Federal court
2    APPOINtMENt COUNSELS ON COMPLINtS
3    UNDER The civil Rights Act. Title 42 U.S.C
4    § 1983 # PLaintiFFS AMENDED COMPLaINt FoR
5    DECLARAtoRY and INJUNctIVE RELiEF
6    [42. U.S.C §§ 1983 & 1985] however
7    Edgar Lee WARREN can not Read ARe WRite But
8    WARREN Did what He can To get This Right
9    and so on and so on Edgar Lee WARREN with
10   The Regional center iN BakERSFeild OF
11   caliFoRNia FoR The Mentally Retarded
12   and mental PRobLems Is FoR Edgar Lee
13   WARREN they have his FiLe there ask FoR
14   WARREN service coordiNator WORKeR
15   there Phone numberR (661) 327-8531 #
16   and The COMPLAINtis max 19-2008 # max 29-
17   2008 # June 19-2008 # June 23-2008 # IS
18   To be Attach and AMENDED COMPLaINts
19   FoR DECLARAtoRY and INJUNctIVE RELIEF
20   [42 U.S.C §§ 1983 & 1985] and so oN
21   and so oN Thank xoU FoR xoUR time.
22
23        Edgar Lee Warren
24        (PlaintiFF's SignatuRe)
25
26
27
28

1  can not get all on here see Attach

2  complaint

3

4

5  III.    Statement of Claim.

6        State here as briefly as possible the facts of your case.  Be sure to describe how each

7  defendant is involved and to include dates, when possible.  Do not give any legal arguments or

8  cite any cases or statutes.  If you have more than one claim, each claim should be set forth in a

9  separate numbered paragraph.

10  can not get all on here see Attach

11  complaint

12

13

14

15

16

17

18

19

20

21

22

23  IV.    Relief.

24        Your complaint cannot go forward unless you request specific relief.  State briefly exactly

25  what you want the court to do for you.  Make no legal arguments; cite no cases or statutes.

26  Put This Lawsuit through Federal court Butte

27  county Jail and Sergeant Browfield and Sergeant

28  Cooley and officer Thornton and Federal officer
Put Sergeants and officer Federal Jail For
Violated Federal law

COMPLAINT                    - 3 -

1

2

3

4

5   I declare under penalty of perjury that the foregoing is true and correct.

6

7   Signed this **23** day of **June**, **2008**

8

9          *Edgar Lee Warren*

10                    **(Plaintiff's signature)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                          - 4 -

1  I declare under penalty of perjury that the
2  foregoing is true and correct. Edgar Lee Warren
3  can not read and write But Warren did what
4  He can to get This Right.
5
6  Edgar Lee Warren
7  35 County center DR.
8  Oroville, ca 95965
9
10  Napa State Hospital
11  2100 Napa-Vlleio Highway
12  Napa, ca 94558-6293
13  Public (707)253-5000
14  TDD (707) 253-5768
15  Fax(707) 253-5513
16
17  Edgar Lee Warren is Waite To go To
18  Napa State Hespital so if Warren is
19  not here that where Warren Will be.
20
21  signed 23 day of June 2008
22
23          Edgar Lee Warren
24          (Plaintiff's Signature)
25
26
27
28

    d1.    That defendant California Board of Corrections be ordered to comply with Penal Code §§6031.1 and 6031.1(c).

    5.    That if a satisfactory plan cannot be submitted and implemented, the defendants be enjoined and restrained from incarcerating or detaining any and all prisoners in the Jail and further enjoined from transferring prisoners to an alternative facility unless defendants can provide evidence satisfactory to the Court that the alternative does not suffer from the conditions herein complained of and that it is accessible to visitors and counsel.

    6.    That the Court retain jurisdiction over defendants until such time that the Court is satisfied that the practices, policies, acts and omissions alleged herein no longer exist and will not reoccur.

    7.    That the Court award reasonable attorneys' fees, investigator fees, paralegal fees and costs of suit herein to plaintiffs.

    8.    That the Court award other such relief as may be necessary and proper.

    For the foregoing reasons, and for those reasons which will be argued by plaintiffs at time of hearing on this Motion, plaintiffs would urge the court to deny defendants' Motions to Dismiss, Motion to Strike and Motion to Compel Further Statement of Claim.

Dated: _____      Respectfully submitted, YOUR NAME AND ADDRESS HERE

---

## UNITED STATES DISTRICT COURT
## _____ DISTRICT OF CALIFORNIA

| | |
|---|---|
| *Edgar Lee Warren* , )<br>**Plaintiffs,** )<br>*Governor Arnold* )<br>*Schwarzenegger,* )<br>*Butte County Jail,* )<br>*Top Medical Staff and* vs. )<br>*Doctors, Clic Law library* )<br>*Sergeant Broulfield Sergeant Gooly* )<br>*Officer Thornton* **Defendants.** ) | **PLAINTIFFS' REPLY AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION TO COMPEL FURTHER STATEMENT OF CLAIM** |

TO:   The defendants herein, and their attorney of record COME NOW THE PLAINTIFFS who submit the following Reply and Opposition to the Motion to Dismiss, Motion to Strike and Motion to Compel Further Statement of Claim filed herein by the defendants.

Dated: *June 23-2008*

           Respectfully submitted,

           _____
           **Attorney for Plaintiffs**

           *Edgar Lee Warren*

1  Edgar Lee WARREN IS asKing The Federal court
2  APPOINtMENt COUNSELS ON COMPL INtS
3  UNDER The civil Rights Act, Title 42 u.s.c
4  § 1983# Plaintiff's AMENDED COMPLaINt FOR
5  DECLARatORX and INJUNCtIVE RELIEF
6  [42 u.s.c §§ 1983 & 1985] however
7  Edgar Lee warren can not Read ARe wRite But
8  WaRREN Did what He can To get This Right
9  and so oN and so oN Edgar Lee WARREN with
10 The RegioNAL center iN BaKERSFcild of
11 califORNia FOR The mentally Retarded
12 and mental PRobLems IS FOR Edgar Lee
13 WARREN they have his File there ask For
14 WARREN service coordiNatOR WORKeR
15 there Phone number (661) 327-8531# and The
16 COMPLaINt's may 19-2008# may 29-2008#
17 June 16-2008# June 23-2008# IS To be
18 AttAch and AMENDED complaINts FOR
19 DECLARatORY and INJUNCtIVE RELIEF
20 [42 u.s.c §§ 1983 & 1985] and so oN and so
21 oN ThanK you FOR you youR time.

23   Edgar Lee WarreN
24   (Plaintiff's signature)

SECTION 1983 AND THE STRUGGLE FOR PRISONER'S RIGHTS

Although Section 1983 of Title 42 USC was enacted by the U.S. Congress over 100 years ago, it had very little effect until the 1960's. Section 1983 was originally known as the Federal Civil Rights Act of 1871. It was supposed to enable black people to have the new constitutional rights which they won after the Civil War enforced. The 13th, 14th, and 15th Amendments to the U.S. Constitution prohibits slavery, establishes the right to due process of law, and guarantees every male citizen the right to vote.

Some judges in the state courts refused to enforce these rights, especially when the rights were violated by other officials of state and local government. The U.S. Congress passed Section 1983 which permitted persons to sue in federal court whenever state or local officials failed to uphold the law. Yet, Federal judges continued to ignore this law, along with other civil rights bills that had been passed by Congress.

Although the purpose of Section 1983 was to bypass the state courts, federal judges usually ruled that lawsuits had to go back to those very state courts. Their rulings remained law until the civil rights movement. The key decision to eliminate the restrictions on Section 1983 came in 1961, in the case of Monroe v. Pape, 365 U.S. 167 (1961).

In 1964 the U.S. Supreme Court confirmed that a prisoner can use Section 1983 to sue state prison officials in federal court. Cooper v. Pate, 378 U.S. 546 (1964). Prisoners began to file more and more federal suits against prison abuses. A few cases were decided favorably on behalf of the petitioners, dealing mainly with freedom of religion, crude brutality and the prisoner's rights to take legal action without interference from prison staff. A significant contribution toward the education of prisoners regarding 42 USC, Sec. 1983 occurred in 1972 by way of the Jailhouse Lawyer's Manual, a publication of the Prison Law Collective in San Francisco on which this manual is based.

In 1991, the U. S. Supreme Court ruled that deliberate indifference must be shown to exist on the part of the Department of Corrections in order for the Court to rule in favor of the plaintiff(s). The current Court reflecting a more conservative group of judges, is handing down more and more decisions that diminish rights previously granted by a more liberal court.

## WHO CAN USE SECTION 1983?

Although Section 1983 was designed especially to help black people enforce the rights won after the civil war, anyone can use it, regardless of race. The person need not be a citizen. Civil death laws, which take away or limit a prisoner's right to use state courts for personal suits, do not affect the right to sue in the federal courts on the basic of 42 USC, Section 1983.

## WHAT IS COVERED?

The action(s) mentioned in the suit must constitute a violation of federal rights regarding conditions or treatment in jail, prison, or at the hands of law enforcement, and they must have been using their power from the state or local government. Someone acting under "color of authority" (anyone whose salary is paid with tax money) must violate federally protected constitutional rights.

## RELIEF THAT CAN BE REQUESTED?

Monetary damages can be requested. A declaratory judgement can be requested in that the court issue a finding that the rights of the prisoner were violated, and/or injunctive relief, in which the court orders the offending prison officials to desist in that which is the subject of the complaint.

## REQUIRED LEGAL PAPERS

The basic papers for starting any federal suit are a summons and complaint. An affidavit presenting legal arguments can also be submitted.

## SUMMONS AND COMPLAINT:

To begin, a copy of the complaint, usually the most significant document in the suit, is mailed to the U. W. District Court. It is important to complete the complaint to the satisfaction of the court, stating the name of the one bring suit, (plaintiff(s)), those against whom the suit is being brought (defendants), what occurred, what the plaintiffs want the court to do (relief). In addition, those laws that give the court the power to rule on the particular suit (the court's "jurisdiction") are to be stated. If the complaint does not meet all the requirements the suit may be dismissed at the start. The plaintiff has the right, though, to amend the complaint at least once before an answer is submitted by the defendants. To amend the complaint, after it has been submitted, follow the same form a the original complaint, indicating that it is an "Amended Complaint." The amended complaint can not deviate from the original in regard to what has occurred. An amended complaint may name additional defendants, request somewhat different relief, add or drop a plaintiff, or change the statement which lists the

from the federal court if it is preferred that their form be used. Each prisoner who is a plaintiff on the complaint must submit a separate affidavit showing that he or she is too poor to pay court costs.

## REQUEST FOR APPOINTMENT OF COUNSEL:

The in forma pauperis law, 28 USC, Sec. 1915(d), allows a U.S. District Judge to "request an attorney to represent any such person unable to employ counsel." On the basis of this law, district judges frequently have appointed lawyers for prisoners who filed section 1983 suit on their own behalf. In Almond v. Kent, 459 F. 2d 200, 204 (4th Cir. 1972), a U.S. Court of Appeals ordered a district judge to appoint counsel for a prisoner in a section 1983 suit after the district judge had refused to do so. In Hudson v. Hardy, 412 F. 2d 1091, 1095, (D.C. Cir 1968), another Court of Appeals said that it is the district court's "plain duty to appoint counsel" to help defend a motion for summary judgment "when necessary to insure that an indigent prisoner's allegations receive fair consideration." Most judges have ruled that section 1915(d) does not authorize the court to pay a lawyer for his work in a section 1983 suit. In Jordan v. Fitzharris, 257 F. Supp. 674 (N.D. Cal. 1966), however, the court not only appointed a lawyer for a prisoner, but also included the lawyer's "necessary expenses " of handling the case as part of the "costs" of the suit which had to be paid by the party that lost the suit; in that case, the Warden of Soledad Prison in California. In Newman v. Alabama, 349 F. Supp 278, 286 (M. D. Ala. 1972), the court ordered the defendants, prison officials, to pay $2,483 for expenses (including a deposition and photocopying) and $12,000 attorney's fees. 42 USC, Sec. 1988 is a provision which will allow an attorney to collect fees. Because there are instances of decisions in which large sums of fees were granted to attorneys who represented prisoners, if possible, it may be to the advantage of the prisoner to obtain the help of an attorney. This is not easy with for various reasons. If the suit has substantial merit, though, an attorney may be willing to take the suit if he or she feels it is winnable.

## WHERE TO FILE:

California prisoners will file in one of the following courts:

Eastern District of CA: 650 Capital Mall, Sacramento, CA. 95814. (When incarcerated/filing from Fresno, file at 1130, O St. Room 4203, Fresno, CA 93721). This district includes the counties of Alpine, Amador, Butte, Calaveras, Colusa, El Dorado, Fresno, Glenn, Inyo, Kern, Kings, Lassen, Madera, Mariposa, Merced, Modoc, Mono, Nevada, Placer, Plumes, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Stanislaus, Tehama, Trinity, Tulare, Tuolumne, Yolo and Yuba.

Northern District of CA: 450 Golden Gate Ave., San Francisco, CA 94102. This district includes the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma U.S. Courthouse, 450 Golden Gate Ave., San Francisco, CA. and (3) Central District of Calif.: U.S. Courthouse, Los Angeles, CA, 90012.

Central District of CA: 312 N. Spring St., Los Angeles, CA. 90012-4793. This district includes the counties of Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara and Ventura.

Southern District of CA: 940 Front St., San Diego, CA 92189. This district includes Imperial and San Diego Counties.

Prisoners from states other than California will be able to obtain the address of the U.S. Court in which he or she must file, from the U.S. Congress, Washington, D.C. A quick check in the library may produce the necessary address. The District Court, upon request, will provide all the information regarding Local Rules, filing, service of complaint, the number of copies required by the court, etc. may differ from that of California.

## PLAINTIFF'S RIGHT TO FILE AND COMMUNICATE WITH COURTS, LAWYERS AND MEDIA:

Prison staff are prohibited from confiscating, reading, censoring, or in any way delaying a prisoner's legal papers, or otherwise interfering with any communication between the prisoner and a court. No communication needs the approval of a prison representative. Many court decisions have been handed down on this subject, but some of the older ones include:

Ex Parte Hull, 312 U.S. 546, 549 (1941)

Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969)

Smartt v. Avery, 370 F.2d 788, 790 (6th Cir. 1967)

DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966)

McCloskey v. Maryland, 366 F.2d 72, 74 (4th Cir. 1964)

Section 2600 of the California Penal Code entitles a prisoner to correspond confidentially with the courts, lawyers and public officials. The California Supreme Court has held that this law prohibits prison officials from reading, censoring or otherwise

interfering with any mail between prisoners and attorneys. (In Jordan, 7 Cal. 3d 930 (1972).

## PRISONERS' RIGHT TO HELP EACH OTHER:

In Johnson v. Avery, 393 U.S. 483 (1969), the U.S. Supreme Court held that it is unconstitutional for a prison to have any rule against jailhouse lawyers and "writ-writers." The California Supreme Court has ruled that prison officials cannot prohibit a prisoner from having in his or her possession legal papers relating to another prisoner's case. (In re Hall, 2 Cal. 3d 675 (1970.) The court recognized that such a rule would make it impossible in practice for prisoners to help one another with legal work.

## ACCESS TO LAWBOOKS:

In 1970 a U.S. District Court in California ruled that adequate prison law libraries are essential if prisoners are to have access to the courts. The decision, Gilmore v. Lynch, 319 F. Supp. 105 (N.D.Cal. 1970), also ordered California officials to stop destroying lawbooks or removing them from libraries. In 1971 the U.S. Supreme Court upheld this ruling and asked the district court to issue an order stating which law books the prison must have. (Younger v. Gilmore, 404 U.S. 15 (1971).) We know from our correspondence with prisoners nationwide that there are many jails and some prisons that still do not have a law library, or the law library that exists, is inadequate. To cause a prison or jail to provide an adequate law library would be a most significant success on the part of a plaintiff as it's establishment would serve other prisoners for years to come.

## GETTING IMMEDIATE HELP FROM THE COURT:

Ordinarily, months pass before the court reaches any decision regarding a lawsuit. But it may be necessary for the court to intervene to protect the prisoner's rights prior to the final decision. The judge can issue a Temporary Restraining Order (TRO), followed by a Preliminary Injunction. The following situations may require a TRO and a Preliminary Injunction:

(a) Prison staff is taking actions, or threatening actions that make it difficult for the prisoner to continue the lawsuit. For years the courts have issued TRO's to protect prisoners rights.(Brenneman v. Madigan, 343 F. Supp. 128 (N.D. Cal. 1972.)

(b) Prison officials are taking actions,or threatening actions that could make a favorable court decision meaningless by the time it was decided. In one case, California officials were about to destroy law books taken from prison libraries. One of the objectives of the suit was to insure that the books be kept in libraries. The court issued a TRO to stop officials from destroying the books until the court decided if they had a right to do so. (Gilmore v. Lynch, 319 F. Supp. 105 (N.D. Cal. 1970; aff's sub norm Young v. Gilmore, 404 U.S. 15 (1971).)

(c) The plaintiff is in danger of serious bodily harm while the suit is being considered. A good example of this type of situation is Inmates of Attica v. Rockefeller, 453 F.2d 12, 24(2nd Cir. 1971).

In that case a U.S. Court of Appeals ruled that the district judge should have issued a Preliminary Injunction to stop "further abuse, torture, beatings and similar conduct." The court stressed that there had been a pattern of brutal conduct continuing over several days, and it seemed likely that some prisoners might be seriously injured while the court was considering their lawsuit.

Just because one of these situations seems to be present, does not mean that a TRO is automatically or a Preliminary Injunction is forthcoming. These situations only show that the prisoner/plaintiff will be "irreparably harmed" if temporary relief is not granted. In addition, it needs to be shown that there is a reasonable chance of winning the suit, and that the harm to the plaintiff(s), if temporary relief is not granted, will be greater than the harm that might result from the prison officials temporarily stopping their actions. The harm that might result includes harm to other prisoners and to the society in general, as well as harm to the prison officials. Asking for a TRO shows the urgency of the situation, however, such relief is rarely granted. Many important permanent injunctions have been won after the judge first denied temporary relief.

## REGARDING the FILING OF CIVIL RIGHTS ACTIONS

1.   Important Note:

THE COURT WILL NOT RESPOND TO ANY LETTER WHICH ASKS FOR INFORMATION THAT IS CONTAINED IN THIS PACKET. Any other letter which provides information about your case or asks a question not covered in this packet, must be addressed to the Clerk of the Court, not to a judge. Communication between an

individual party and the district judge is strictly prohibited. See Local Rule 134 (a).

Although the court will liberally construe documents filed by litigants who are not represented by counsel, all parties are required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California. Applicable law may subject plaintiffs proceeding in forma pauperis to certain costs of litigation, such as witness fees and discovery expenses. Plaintiffs judicial process will be subject to court orders curtailing future litigation.

2.  Consent to Proceed Before Magistrate

The court has ordered the United States Marshal to serve the complaint in your case on the defendants. Enclosed with a copy of the court's order, is a form for consent to proceed before a U. S. Magistrate. A copy of this form has also been provided to the defendants.

Currently, a Magistrate is authorized by law and by this court (1) to issue final orders in non-dispositive matters, and (2) to issue findings and recommendations for consideration by a district judge, in dispositive matters such as motions to dismiss, for summary judgment, and for injunctive relief. See Local Rule 302; General order 262. This process will continue even if the parties do not consent to proceed before a magistrate. The consent by the parties to proceed before a magistrate allows the magistrate to issue final orders in dispositive matters and to conduct a trial in your case.

3.  After an Answer is Filed

(a) Whether defendants file an answer or a motion in response to your complaint, they are required to send you a copy. The Federal Rules of Civil Procedure (Fed. R. Civ. P.) do not generally allow the filing of a response or a reply to defendants' answer. The complaint and answer set up all the legal issues to be decided in the case. The court assumes that you dispute all of the defendants' legal defenses and their denial of the facts that you allege.

(b) Once the answer is filed, it is your responsibility to move the case to a conclusion. You may do that through a process known as discovery (this is discussed in more detail below). If you fail to move the case forward, the case may be dismissed for lack of prosecution.

4.  Filing and Serving Documents

Any document which you submit to the court for consideration must be "served" on defendants. Documents usually served by placing a copy in the U. S. Mail. If an attorney has filed a document with the court on behalf of any defendant, then you must serve that attorney and not the defendant himself. You must include with each paper that you send to the court, a certificate which states the date that an accurate copy of that paper was mailed to defendants or their attorney. See Fed. R. Civ. P. 5. Any document which is received by the clerk which fails to include a certificate of service, may be returned to you and disregarded by the court.    The Clerk of the Court cannot serve any document for you.

5.  Copies of Filed Documents

The Clerk of the Court does not provide copies of documents to litigants, except at a charge of fifty cents ($0.50) per page. This charge applies to litigants proceeding in forma pauperis. If you want to receive verification of the filing of any documents you send to the court, you must provide an extra copy of the first page of that document, and request that the clerk of the court return it with an endorsement of filing. If you want to have a complete copy of any document you send to the court, you must supply that copy for endorsement and return by the clerk, along with a request that the copy be returned to you.

6.  Motions

(a) Any request that this court issue an order, must be made by a formal motion. Motions must comply with the Local Rules of this Court. Rule 230(m) of the Local Rules of the District in which you are filing provides that motions in civil rights cases filed by inmates are decided on the record (the file in the case), without a hearing. This rule applies only to cases where one party is currently incarcerated and is proceeding without a lawyer. In all other cases, motions must be noticed on the motion calendar pursuant to Local Rule 230(b).

If defendants file a motion in the case, you will have an opportunity to respond to it. The Clerk of the Court will send you a schedule stating when your response will be due. If you do not file an opposition to the motion, the motion may be granted.

(b) If you are not incarcerated at the time that you want to file a motion, or you have obtained an attorney to represent you in the case, then you must follow the procedure stated in the Local Rule 230 (b). Contact the Court to learn of the upcoming calendar dates for the magistrate assigned to your case. You must serve notice of the date selected for hearing on the defendants or his attorney, at least twenty-eight (28) days before the hearing date.

7.    Amended Complaints

(a) A party may amend a pleading once as a matter of course at any time before an answer is served. Fed. R. Civ. P. 15(a). If you wish to amend your complaint before you receive a copy of defendant's answer, you need only submit the amended complaint to the court, indicating that it is an amended complaint, along with two copies.

(b) If you wish to amend your complaint after defendants have served their answer, you must do so by motion in accordance with the procedure outlined above. (See Motions.)

(c) All motions for leave to file an amended complaint must be accompanied by a copy of your proposed amended complaint and a certificate of service on counsel for the defendants.

Whether an amended complaint is filed by right or after leave of court is granted, the amendment will supersede the original complaint. Loux v. Rhay, 375 F. 2d 55, 57 (9th Cir. 1967); Local Rule 220. This means that once an amended complaint is filed, the original complaint will not be considered by the court. Thus your amended complaint must reallege all of the claims from the original complain, as well as all new claims. You may not refer back to the original complaint in any way. However, you may attached to the original complaint be re-attached to the amended complaint.

8.    Discovery

Once the defendants have been served with your complaint, you may begin the discovery process. It is up to you to gather all the evidence necessary to prepare your case for trial. The court will not conduct discovery for you. Please refer to Rules 26 to 37 of the Federal Rules of Civil Procedure and Local Rules 250 and 251 for information about discovery procedures. All discovery motions must be filed according to the procedures outlined above. (See Motions.)

9.    Inquiries to the Court

Generally, all complaints and submitted motions are reviewed by the court will notify you as soon as any action is taken in your case. Due to the large number of civil actions now pending, THE COURT IS UNABLE TO ANSWER INDIVIDUAL INQUIRIES CONCERNING THE STATUS OF YOUR CASE. As long as the court is timely informed of your current address, you will receive all court decisions which might affect the status of your case. It is your responsibility to keep track of the progress of your case.

10.    Change of Address

You must keep the court informed of any change in your address. If you fail to do so, the court cannot be responsible for your failure to receive its orders. This could result in the dismissal of your suit. See Local Rule 183(b).

## INSTRUCTIONS FOR FILING A COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACTION, 42 U.S.C. 1983

I.    Scope of Section 1983

An action under Section 1983 is available to challenge violations of the federal constitution or federal statues which affect the conditions of your confinement or events that occur during your confinement, whether in jail or prison. Although you may ask for and obtain money damages or an injunction under Section 1983, the court cannot issue an order which could affect the length of your sentence in any way. These claims may only be addressed through a writ of habeas corpus. If you want to file an application for a writ of habeas corpus, you must do so on the correct forms, which are provided by the Clerk of the Court on request.

II.    Contents

In addition to these instructions, this manual includes three copies of a complaint form and two copies of a

6

MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS, MOTION TO STRIKE AND MOTION
TO COMPEL FURTHER STATEMENT OF CLAIM

## ARGUMENT

I

## PLAINTIFFS' COMPLAINT IS NOT
## IN VIOLATION OF FEDERAL AND
## LOCAL RULES

Plaintiffs would argue that the Complaint on file herein, while lengthy, is a clear and precise articulation of plaintiffs case and meets the objective of Rule 8(a) of the <u>Federal Rules of Civil Procedure</u> in providing the defendants with precise notice of plaintiffs' legally cognizable grievances.

It is made clear throughout the Complaint that the grievances specified occurred at the time of the filing of the Complaint; all statements are made in the present tense. It is also specified that the grievances were occurring at the _____ County Jail, Central Facility. Rule 9(f) of the <u>Federal Rules of Civil Procedure</u> is not violated by such a pleading format. <u>Supreme Wine Co.</u> v. <u>Distributors of New England, Inc.</u> 198 F.Supp. 318 (D.C. Mass 1961). See also: <u>Jones</u> v. <u>United Gas Improvement Corp.</u>, 383 F.Supp. 420 (D.C. Pa. 1974).

The length of plaintiffs' Complaint is the result, not of any attempt on their part to obfuscate the issues, but of the number of parties necessarily named and the enormity and complexity of the issues raised by their conditions of confinement.

In every case cited by the defendants in their motion, complaints were dismissed, not because of their length, but because they were verbose, redundant, confused, and replete with irrelevant material. In <u>Gordon</u> v. <u>Green</u>, 602 F.2d 743 (C.A. 5, 1979), cited by the defense, the court was contemplating pleadings totaling more that 4000 pages and requiring a truck to convey.

In every case cited by the defendants in their argument that this Complaint is overly long, the court wisely balanced that length and complexity of the complaint against the issues actually before the court for decision. A lengthy complaint not justified by the simplicity of the matter should be dismissed. <u>Condol</u> v. <u>Baltimore & O.R. Co.</u>, 199 F.2d 400, 402 (D.C. 1952). Plaintiffs would argue, and with justification, that the issues presented are simply and succinctly state in the Complaint on file herein, and that their attempt to precisely state the issues before the court has been successful, thereby fulfilling the objectives of Rules 8 and 9 of the <u>Federal Rules of Civil Procedure</u>.

The defendants raise the specter of a possible statute of limitations problem. Obviously, plaintiffs' Complaint refers to events occurring contemporaneously with the filing of the Complaint. Even so, the issue of a possible violation of the statute of limitations cannot be brought by the defense in a motion to dismiss unless the complaint, through specific requirements that the cause of action arose in the distant past, presents the question to the court. <u>Contract Buyers League</u> v. <u>F. & F. Ins.</u>, 300 F.Supp. 210 (D.C. Ill. 1969), aff'd 420 F.2d 1191, cert. den., 91 S.Ct. 40, 41, 42, 400 U.S. 821, 27 L.Ed. 2d 49

II

## PLAINTIFFS' ALLEGATIONS ARE
## SUFFICIENTLY SPECIFIC, AND
## PLAINTIFFS DO NOT LACK STANDING

The defendants argue, in their Motion to Dismiss, that plaintiffs' allegations lack specificity to a fatal degree, and cite in support of this contention O'Shea v. Littleton (not "Litton" as in defendants' motion), 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed. 2d 674 (1974), a case the defense asserts is "directly on point."

Plaintiffs would counter that the difference between the O'Shea case and this case are more significant than any superficial similarities. In O'Shea plaintiffs brought suit alleging the county government and judiciary had engaged in a pattern and practice of racial discrimination in the treatment of criminal defendants. Plaintiffs did not allege they were individually or collectively the victims of the discriminatory pattern they described, nor did they allege the existence of pending criminal matters wherein they might, individually or collectively, suffer any future harm. It appears that, in the O'Shea matter, plaintiffs constituted an organization battling for the civil rights of unnamed, non-party persons, although this is not made clear in the court's opinion. The court held plaintiffs failed to satisfy the case or controversy requirement of Article III of the U.S. Constitution, and lacked standing to sue.

Quite distinct is the case before the court. All of the named plaintiffs have alleged they are currently incarcerated in the _Butte_ County Jail, Central Facility, and suffer from the pattern of unlawful conduct perpetrated upon them by the defendants.

In another case cited by the defendants, National Indian Youth Council v. Morton, 363 F.Supp. 475 (1973), the plaintiffs lacked standing to sue, according to the sound reasoning of the court, because they simply were not the persons aggrieved by a school policy which expelled certain (non-plaintiff) Indian students. The defendants misstate the holding of the court in National Indian Youth Council v. Morton, which simply has no bearing on the case now pending before this court.

III

## PLAINTIFFS' ALLEGATIONS AGAINST
## INDIVIDUAL DEFENDANTS ARE
## SUFFICIENTLY SPECIFIC

Plaintiffs have framed their allegations against the defendants in general terms for reasons which make such a format unavoidable: plaintiffs have described their grievances in terms of a pattern of unlawful conduct, engaged in by all of the named defendants, and plaintiffs are unaware of the formal and informal hierarchy within the jail administration, and therefore do not know who is directly responsible for the pattern of conduct of which they complain. Whenever possible, see for example paragraph 34 of the Complaint, plaintiffs have specified the defendants who are responsible for the pattern of unlawful conduct of which they complain.

To demonstrate their mastery of the obvious, plaintiffs would note they have not requested money damages as a form of relief; they have requested an exercise of this court's injunctive powers. If plaintiffs had not named as defendants those persons able to exercise control over the conduct of those who carry out the policies of which plaintiffs complain, this suit would be doomed by its own limited scope.

The named defendants in this suit fall into three categories: jail employees (guards and medical personnel), supervisors (jail administration and members of the _Butte_ County Board of Supervisors), and the California Board of Corrections. The acts complained of by

plaintiffs are perpetrated by jail employees, acting under the supervision and control of the jail administration. Those allegations reaching to the California Board of Corrections specify those defendants. (See Complaint, paragraphs 47 & 48.)

The defendants misstate the law regarding the liability and accountability of supervising personnel. Under 42 U.S.C. 1983, supervising personnel can be held liable, and therefore accountable, for the behavior of their subordinates on several different grounds, and no allegation or proof of a "direct causal connection between the supervisorial acts or policies and the alleged wrongdoing" is required. (Defendants' Motion to Dismiss, p. 8, lines 1-2.)

If a supervisor is present on the scene of an unlawful act by his or her subordinate, or directs in some manner the act in question, he or she is subject to liability. Maclin v. Paulson, 627 F.2d 83 (7th Cir., 1980) Dellums v. Powell, 566 F.2d 216 (D.C. Cir. 1977).

Acquiescence in the known acts of subordinates is a sufficient basis for a finding of supervisorial liability. Alvarez v. Wilson, 431 F.Supp. 136, 146 (N.D. Ill. 1977); Downs v. Department of Public Welfare, 368 F.Supp. 454, 464 (E.D. Pa. 1973).

A failure to adequate train subordinate officers in necessary skills has been held by some courts to be a sufficient basis for a finding of liability. Dewell v. Lawson, 489 4.2d 877 (10th Cir. 1974); Owens v. Haas, 601 F.2d 1242 (2nd Cir. 1979).

A failure to adequately supervise the conduct of subordinates has also been a successful basis for a finding of supervisorial liability. Opriano v. Johnson, 632 F.2d 1096 (4th Cir. 1980); Davis v. Jahradnick, 600 F.2d 458, 459, n.1 (4th Cir. 1979). In fact, knowledge of a pattern or practice of unconstitutional violations or conditions, or the existence of facts which create the potential for violations, may subject a supervisor to liability for failure to correct the situation. Holland v. Conners, 491 F.2d 539 (5th Cir. 1974).

Liability against a supervisor may also be based upon a violation of a statutory duty by him or her which caused or made possible the violation of plaintiffs' constitutional rights. Whirl v. Kern, 407 F.2d 781, 795 (5th Cir. 1969); Johnson v. Duffy, 588 F.2d 740 (9th Cir. 1978).

For the above reasons, and given the above body of law, plaintiffs assert their allegations are more than sufficiently specific to alert the defendants as to the nature of their grievances.

## IV

## PLAINTIFFS' CLASS ACTION ALLEGATIONS SHOULD BE TESTED AT THE TIME OF HEARING ON PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS

It is plaintiffs' burden to demonstrate to the court that the requirements of Rule 23 of the Federal Rules of Civil Procedure and Local Rule 124 have been satisfied, and that certification as a class action is appropriate. Peterson v. Oklahoma City Housing Authority, 545 F. 2d 1270 (C.A. 10 Okla. 1976). Plaintiffs should, and will, attempt to meet that burden by noticing a motion for certification, at which time the defendants should more appropriately make their objections to class certification.

## V.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS ARE SUFFICIENTLY SPECIFIC TO SERVE THE OBJECTIVES OF RULE 23 AND LOCAL RULE 124

Defendants argue that plaintiffs have not met the technical pleading requirements of Local Rule 124.

Specifically, defendants contend plaintiffs have failed to specify the number of members in each class, thereby fatally failing to comply with Local Rule 124 and Federal Rule of Civil Procedure 23.

Plaintiff classes are two:  members of the _____ County Jail, Central Facility, population who are unsentenced and held bail, and members of that population who either have been sentenced and/or are held on parole holds and/or violations.  Plaintiffs do not know the number of members of each class, although they know that both classes consist of more than one hundred adult males.

The numerous requirement of Rule 23 is usually satisfied by showing a colorable claim by a named plaintiff who is a member of a larger class having similar claims.  Weathers v. Peters Realty Corp., 499 F. 2d 1197 (C.A. 6 Ohio, 1974).  And, where the members of a class cannot presently be ascertained by reasonable diligence, nor their members accurately estimated, the purposes of Rule 23 are best served by holding that the firs criterion of Rule 23(a) is satisfied.  Eskra v. Morton, 380 F. Supp. 205 (D.C. Wis., 1974), rev'd on other grounds, 524 F. 2d 9 (C.A. 7 Wis. 1974).

Generally speaking, the numerous requirement and other prerequisites to a class action certification contained in Rule 23(a), Federal Rules of Civil Procedure, should be liberally applied where emphasis is upon injunctive relief benefitting both present and future class members rather than upon money damages.  Horn v. Associated Wholesale Grocers, Inc., (C.A. Kan., 1977) 555 F. 2d 1090 (C.A. 5 Miss. 1975).

Finally, while plaintiffs bears the burden of showing the class is too numerous for joinder, plaintiffs need not show the exact number of class members.  Barlow v. Marion County Hospital District, 88 F.R.D. 619 (M.D. Fla. 1980).  In fact, in a suit such as the one before the court, where plaintiffs seek to join both present and future members of the classes, quantifying is impossible, as is joinder.  When a class action on behalf of jail inmates was brought to provide judicial relief for present and future inmates, joinder of all members was held impractical, thereby allowing for class certification.  Mawson v. Wideman, 84 F.R.D. 116 (M.D. Pa. 1979).

## VI

### PLAINTIFFS' INTERESTS ARE PREDOMINANTLY
### SHARED AND COMMON, RATHER THAN DISTINCT
### AN ADVERSE

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the court must find, at the time of hearing on plaintiffs' Motion for Certification, that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  Defendants assert, in a premature and inappropriate attempt to challenge the class action portion of plaintiffs' Complaint, that the interests of the plaintiffs are, as a matter of law, too individual and unique to warrant class certification.

Defendants first assert that the issue of medical care is individual, and cannot be decided on a class basis.  Plaintiffs would counter that their allegations apply to the plaintiffs classes as a whole, and describe specific behavior patterns which result in inadequate medical care for the entire jail population.  These specific allegations include:  inadequate recreations to maintain a healthy body; inadequate diet; failure to provide regular hygiene facilities; improper heating, cooling and ventilation; poor sanitation; exposure to contagious diseases; inadequate preventive

and diagnostic care; seizures of prescribed medications; refusals to respond to requests for medical care; inadequate examinations prior to diagnosis and treatment; denial of access to specialists; and the unlawful practice of medicine by the nursing staff. These complaints are not isolated and unique to individuals, but instead constitute a pattern of disregard for the physical health of plaintiffs.

Defendants additionally argue that the question of whether to provide medical care and/or methadone maintenance to particular inmates is an individual issue which cannot be decided within the context of a class action. Plaintiffs have alleged a pattern of refusing to provide medical care and/or methadone to addicted, recently admitted, prisoners. (n Cudnick v. Krieger, 392 F. Supp. 305 (D.C. Ohio 1974), the court certified a class action in which plaintiffs brought a civil rights action challenging an admitted jail policy which denied methadone during pre-trial confinement when it was shown the policy was directed at all addicted persons admitted to the jail.

For the foregoing reasons, plaintiffs would assert there is no portion of their Complaint which cannot be considered by the court in a class action context.

## VII

## PLAINTIFFS HAVE STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO EACH OF THE FOLLOWING PARTICULAR CLAIMS

### A.   MAIL CENSORSHIP

Plaintiffs have alleged the defendants open, delay and read their mail from attorneys and others. (Complaint, p. 10); prohibit plaintiffs from receiving through the mail newspapers, magazines and religious texts (Complaint p. 10); and confiscate plaintiffs' personal belongings, including legal and personal mail and written material (Complaint p. 12). There is in the Complaint no general allegation that the defendants censor plaintiffs' mail; instead, plaintiffs' allegations bite directly into the issue of their relationships with their attorneys, and their exercise of free speech and religious liberty, all actionable under 42 U.S.C. 1983 because of the First and Sixth Amendments of the United States Constitution. Hague v. CIO, 307 U.S. 496 (1939); Glasson v. City of Louisville, 518 F. 2d 899 (6th Cir. 1975); Philadelphia Yearly Meeting v. Tate, 519 F. 2d 1335 (3rd Cir. 1975); Schnell v. City of Chicago, 407 F. 2d 1084 (7th Cir. 1969).

The seminal case on the handling of convicted prisoners' mail is Procunier v. Martinez, 416 U.S. 391 (1974). The Court held that prison authorities may screen mail, but may not conduct censorship unless 1) an important or substantial government interest unrelated to the suppression of expression is furthered, and 2) intrusions were no greater than necessary or essential. Id. 416 U.S. 413-414. Additionally, the Court held that due process requires that a decision to censor or withhold mail must be accompanied by rudimentary due process, including notice to the inmate affected, an opportunity for the author of the letter to protest and a hearing by a prison official other than the person who decided to initiate the action. Id. 416 U.s. at 417. See also McNamara v. Moody, 606 F. 2d 621 (5th Cir. 1979).

### B.   VISITORS ALLEGATIONS

Several courts have indicated that a prisoner's visitation is protected by the First Amendment. Feeley v. Sampson, 570 F. 2d 364, 472 (1st Cir. 1978); Laaman v. Helgmoe, 437 F. Supp. 269, 320 (C. N.H. 1977); Lynott v. Henderson, 610 F. 2d 340, 342-343 (5th Cir. 1980); and Hamilton v. Saxbe, 428 F. Supp. 1101, 1109-1112 (N.D. Ga. 1976) aff'd sub nom.

Hamilton v. Bell, 551 F.2d 1056 (5th Cir. 1977).

Plaintiffs have presented an actionable claim to the court. It is for the court to decide, at time of trial, whether the restrictions placed upon visits in the _____ County Jail are so severe as to be violative of plaintiffs' First Amendment rights.

C.    USE OF THE TELEPHONE

Defendants' argument on this point is incomprehensible and must be in error.

Numerous courts have held that pretrial detainees' freedom of expression encompasses reasonable access to telephones to call attorneys, witnesses and loved ones. Wolfish v. Levi, 573 F.2d 118 (2d Cir. 1978); rutherford v. Pitchess, 457 F.Supp. 104, 115 (c.d. Cal. 1978); Owens-El v. Robinson, 442 F. Supp. 1368, 1386-1387 (W.D. Pa. 1978); Jones v. Wittenberg, 440 F. Supp. 60, 90-98 (N.D. Ohio 1977); O'Bryan v. County of Saginaw, 437 F. Supp. 582, 599 (E.D. Mich 1977); Brenneman v. Madigan, 343 F. Supp. 141 (1974); Inmates of Suffolk County Jail v. Eisenstadt, 360 F. Supp. 691 (1975).

D.    ACCESS TO EXERCISE AND RECREATION

Many courts have held that the denial of adequate exercise and recreation to jail inmates is cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. In Spain v. Procunier, 600 F. 2d 189, at 199 (9th Cir. 1979), the court held that plaintiffs must be allowed one hour of outdoor exercise a day, five days a week; to do less was to be in violation of their rights under the Eighth Amendment.

Due process and equal protection of the law have been held to mandate that pretrial detainees attain some minimum measure of outdoor exercise each week. Court orders have ranged from requiring one hour of outdoor exercise daily to 2 & 1/2 hours of outdoor exercise per week, with the preponderance of authority requiring at least one hour a day five days a week. See, inter alia, Campbell v. McGruder, 416 F. Supp. 100 (D. D.C. 1975), aff'd in part, remanded in part, 580 F. 2d 521, 455-546 (D.C. Cir. 1978) (one hour daily); Miller v. Carson, 401 F. Supp. 835, 891-893, (M.D. Fla. 1975).

E.    ACCESS TO A READING LIBRARY

The First Amendment guarantees to prisoners the right to receive and possess reading matter. Jackson v. Godwin, 400 F. 2d 259 (5th Cir. 1968); Brown v. Peyton, 437 F. 2d 1228 (4th Cir. 1971); Rowland v. Jones, 452 F.2d 1005 (8th Cir. 1971); Fortune Society v. McGinnis, 319 F.Supp. 901 (S.D. N.Y. 1970).

In Bell v. Wolfish, 441 U.S. 520 (1979), the United States Supreme Court upheld the use of a "publisher only" rule regarding pre-trial detainees' access to reading material, but under limited circumstances not present herein. First, the Court expressly limited its holding to that rule's application to hardback publications. Id. at 549-550. Second, the Court noted the significance of a "relatively large" library within the institution (Id. at 552.), thereby implying a different conclusion might be reached in prisons or jails without adequate reading libraries. And third, the Court apparently applied a least restrictive alternative test to the rule. Id. at 552.

F.    CONFISCATION OF PERSONAL ITEMS

Plaintiffs have alleged both a violation of state law and a violation of constitutional dimension in asserting their belongings, including legal papers and attorney-client mail, have been confiscated from them without justification.

G.    BATHS AND SHOWERS

Plaintiffs have specifically alleged they are not allowed to bathe on a regular basis, are denied showers as a form of discipline, and are not allow to bathe prior to court appearances. These issues are of constitutional dimension under the Fifth, Eighth and Fourteenth

Amendments of the United States Constitution.

**H.    DIET**

Several cases have held that an inadequate diet is a form of cruel and unusual punishment, violative of the Eighth Amendment of the United States Constitution. Cunningham v. Jones, 567 F. 2d 653 (6th Cir. 1977); Shapley v. Wolff, 568 F. 2d 1310 (9th Cir. 1978); Landman v. Royster, 333 F. Supp. 621, 647 (E.D. Va. 1971).

**I.    OVERCROWDING**

Courts have uniformly approached the issue of overcrowding in terms of the requirements of the Eighth Amendment of the United States Constitution. In the following cases the courts appear to have taken a per se approach to overcrowding: Williams v. Edwards, 547 F. 2d 1206 (5th Cir. 1977) (court hints that 50 square feet per prisoner is required); Inmates of D.C. Jail v. Jackson, 416 F. Supp. 119, 124-125 (D. D.C. 1976) (48 square feet of cell space per prisoner required). The following cases have used the "totality of circumstances" approach: Newman v. Alabama, 559 F.2d 283, aff'd, 406 F. Supp. 318, 334 (M.D. A.a. 1976) (60 square feet of living space per prisoner); Battle v. Anderson, 564 F. 2d 388 (10th Cir. 1977) (60 square feet of cell space).

**J.    HEATING, COOLING AND VENTILATION**

Plaintiffs have specifically alleged that the improper heating, cooling and ventilation in the _____ County Jail, Central Facility, constitute a health threat. (Complaint, p. 13, para. 31) Jail conditions having a significantly adverse impact on mental and physical health of prisoners have been enjoined as unconstitutional. Battle v. Anderson, supra, 564 F. 2d at 393, 403; Campbell v. McGruder, supra, 580 F.2d at 531; Jefferson v. Southworth, 447 F. Supp. 179, 180 (D. R.I. 1978).

**K.    MEDICAL CARE**

As enunciated by the United States Supreme Court, "deliberate indifference to serious medical needs constitutes the 'unnecessary and wanton infliction of pain.'" proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 50 L. Ed. 251, 97 S. Ct. 285 (1976). In the context of broad class action challenges to health care in correctional facilities, as opposed to individual challenges to one instance of inadequate health care, several courts have found that poorly designed, negligent medical procedures may amount to "deliberate indifference" to prisoners' medical needs in violation of the Eighth Amendment. Todaro v. Ward, 565 F. 2d 48, 52 (2nd Cir. 1977); Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754 (3rd Cir. 1979).

**L.    DUE PROCESS IN DISCIPLINARY PROCEDURES**

The leading case on discipline of prisoners is Wolff v. McDonell, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), which established that, when faced with withdrawal of earned time credits, prisoners are entitled to (a) an opportunity to appear before the decision making body, (b) written notice of the charge at least 24 hours in advance of the hearing, (c) an opportunity to present witnesses and documentary evidence when doing so will not be unduly hazardous to institutional safety, (d) an impartial hearing body, and (e) a written statement of the evidence relied on and the reasons for the disciplinary action taken. Id. 418 U.S. 563-73. See also Baxter v. Palmigiano, 425 U.S. 308, 47 L. Ed. 810, 96 S. Ct. 1551 (1976).

In California the basic elements of due process in the discipline of jail inmates is codified in Title 15, California Administrative Code, §1081.

**M.    BRUTALITY**

Plaintiffs have alleged the frequent and arbitrary infliction of physical brutality by guards

in the jail. Physical brutality is, of course, cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

N.    RIGHT TO VOTE

It may be true other prisoners have not filed suit requesting the court enjoin jail administrators from denying them their right to vote, but these prisoners now have, and once done, the constitutional dimension of the requested relief cannot be denied.

O.    EXERCISE OF RELIGIOUS FREEDOMS

Plaintiffs have alleged they are now allowed to practice their religions within the _____ County Jail. There is only one service per week, and only a few prisoners, arbitrarily chosen, are allowed to attend. Other prisoners cannot even receive religious texts, such as The Bible, in the mail.

The United States Supreme Court has consistently recognized that freedom of religion continues to exist inside prison walls. Cooper v. Pate, 378 U.S. 546 (1964); Cruz v. Beto, 405 U.S. 319 (1972).

Once a prisoner demonstrates abridgement of his freedom of religion, it is incumbent upon prison authorities to come forward with a showing that the abridgement serves an important or substantial governmental interest and that they (the prison authorities) are without less restrictive means of achieving that end. Kahane v. Carlson, 527 F. 2d 491 (2nd Cir.1975); Teterud v. Burns, 522 F. 2d 357, 359 (8th Cir. 1975). Cf. Kennedy v. Meacham, 540 F. 2d 1057, 1061 (10th Cir. 1976), which indicates the government must show a compelling state interest.

Religious freedom can be abridged by a denial of religious services. Mawhinney v. Henderson, 542 F. 2d 1 (2nd Cir. 1976). And religious freedom can be abridged through a denial of access to religious reading material. Mukmuk v. Commissioner of Department of Correctional Services, 529 F. 2d 272, 275 (2nd Cir. 1976).

P.    SHAKEDOWN SEARCHES

In the last several years the courts have moved away from the notion that prisoners are completely without any protections from unreasonable searches and seizures. Rather, the courts have been recognizing that although the exigencies of incarceration reduce the scope and extent of prisoners expectations of privacy, prisoners retain a residuum of Fourth Amendment protections. United States v. Savage, 482 F. 2d 1371 (9th Cir. 1973), cert. denied 415 U.S. 932 (1974); Bonner v. Coughlin, 517 F. 2d 1311, 1316, 1317 (7th Cir. 1975); United States v. Lilly, 576 F. 2d 1240-1244 (5th Cir. 1978) reh. denied 599 F. 2d 619 (5th Cir. 1979).

As with all searches, the perpetrators of custodial searches, namely jail officials, carry the burden of showing that such searches are reasonable. United States v. Lilly, supra, 576 F. 2d at 1245; United States v. Savage, supra, at 1373; Hurley v. Ward, 448 F. Supp. 1227, 1230 (S.D. N.Y. 1978).

Q.    CLASSIFICATION OF PRISONERS

Plaintiffs have alleged a violation of state law in their allegation regarding classification of inmates. Plaintiffs have additionally alleged that classification is at times racially motivated in violation of the Fourteenth Amendment.

R.    EDUCATIONAL, VOCATIONAL, REHABILITATION AND WORK FURLOUGH Programs

These issues are state law questions, calling for the court's exercise of pendent jurisdiction. Given the overwhelmingly federal character of this suit, pendent jurisdiction to decide these state law issues appears more than appropriate.

# TABLE OF AUTHORITIES CITED

Alvarez v. Wilson, 431 F.Supp. 136
    (N.D. Ill. 1977)

Barlow v. Marion County Hospital District,
    88 F.R.D. 619 (M.D. Fla. 1980)

Battle v. Anderson,
    564 F.2d 388 (10th Cir. 1977)

Bell v. Wolfish,
    441 U.S. 520 (1979)

Bonner v. Coughlin,
    517 F.2d 1311 (7th Cir. 1975)

Brenneman v. Madigan,
    343 F.Supp. 141 (1974)

Brown v. Peyton,
    437 F.2d 1228 (4th Cir. 1971)

Campbell v. McGruder,
    416 F.Supp. 100 (D. D.C. 1975)

Condol v. Baltimore & O.R. Co.,
    199 F.2d 400 (D.C. 1952)

Contract Buyers League v. F. & F. Ins.,
    300 F.Supp. 210 (D.C. Ill. 1969), aff'd
    420 F.2d 1191, cert. denied 19 S.Ct. 40

Cooper v. Pate,
    378 U.S. 546 (1964)

Cruz v. Beto,
    405 U.S. 319 (1972)

Cudnick v. Kreiger,
    392 F.Supp. 305 (D.C. Ohio 1974)

Cunningham v. Jones,
    567 F.2d 653, (6th Cir. 1977)

Davis v. Jahradnick,
    600 F.2d 458 (5th Cir. 1979)

Dellums v. Powell,
    566 F.2d 216 (D.C. Cir. 1977)

Dewell v. Lawson
    489 F.2d 877 (10th Cir. 1974)

Downs v. Department of Public Welfare,
    368 F.Supp. 454 (E.C. Pa. 1973)

Eskra v. Morton, 380 F.Supp. 205
    (D.C. Wis (1974)

Estelle v. Gamble,

429 U.S. 97 (1976)

Feeley v. Sampson,
    570 F.2d 364 (1st Dis. 1978)

Fortune Society v. McGinnis,
    319 F.Supp. 901 (S.D. N.Y. 1970)

Glasson v. City of Louisville,
    518 F.2d 899 (6th Cir. 1975)

Gordon v. Green,
    602 F.2d 743 (C.A. 5 1979)

Hamilton v. Saxbe,
    428 F.Supp. 1101 (N.D. Ga.) 1976)

Holland v. Conners,
    491 F.2d 539 (5th Cir. 1974)

Horn v. Associated Wholesale Grocers Inc.
    555 F.2d 270 (C.A. 10 Kan. 1977)

Inmates of Allegheny County Jail v. Pierce
    612 F.2d 754 (3rd Cir. 1979)

Inmates of D.C. Jail v. Jackson,
    416 F.Supp. 119 (D. D.C. 1976)

Inmates of Suffolk County Jail v. Eisenstadt,
    360 F.Supp. 691 (1975)

Jackson v. Godwin,
    400 F.2d 259 (5th Cir 1968)

Jefferson v. Southworth,
    447 F.Supp. 179 (D. R.I. 1978)

Johnson v. Duffy,
    558 F.Supp. 740 (9th Cir 1978)

Jones v. Diamond,
    519 F.2d 1090 (C.A. 5 Miss. 1975)

Jones v. United Gas Improvement Corp.
    383 F.Supp. 420 (D.C. Pa. 1974)

Jones v. Wittenburg,
    440 F.Supp. 60 (N.D. Ohio 1977)

Kahane v. Carlson,
    527 F.2d 491 (2d Cir. 1975)

Laaman v. Helgemoe,
    437 F.Supp. 269 (C. N.H. 1977)

Landman v. Royster,
    333 F.Supp. 621 (E.D. Va. 1971)

Lynott v. Henderson,
    610 F.2d 340 (5th Cir. 1980)

McNamara v. Moody,
       606 F.2d 621 (5th Cir 1979)

Maclin v. Paulson,
       627 F.2d 83 (7th Cir 1980)

Mawhinney v. Henderson,
       542 F.2d 1 (2nd. Cir 1976)

Mawson v. Wideman,
       84 F.R.D. 116 (M.D. Pa. 1979)

Miller v. Carson,
       401 F.Supp. 835 (M.D. Fla. 1975)

Mukmuk v. Commissioner of Department,
       529 F.2d 272 (2nd Cir. 1976)

National Indian Youth Council v. Morton,
       363 F.Supp. 475 (1973)

Newman v. Alabama,
       559 F.2d 228 (M.D. Ala. 1976)

O'Bryan v. County of Saginaw,
       437 F.Supp. 582 (E.D. Mich. 1977)

Opriano v. Johnson,
       632 F.2d 1096 (4th Cir. 1980)

O'Shea v. Littleton,
       414 U.S. 488 (1974)

Owens-El v. Robinson,
       442 F.Supp. 1368 (W.D. Pa. 1978)

Owens v. Haas,
       601 F.2d 1241 (2nd Cir. 1979)

Peterson v. Oklahoma City Housing Authority
       545 F.2d 1270 (C.A. 10 (Okla. 1976)

Philadelphia Yearly Meeting v. Tate,
       519 F.2d 1335 (3rd Cir. 1976)

Procunier v. Martinez,
       416 U.S. 296 (1974)

Rowland v. Jones,
       452 F.2d 1005 (8th Cir. 1974)

Rutherford v. Pitchess,
       457 F.Supp. 104 (C.D. Cal. 1978)

Schnell v. City of Chicago,
       407 F.2d 1084 (7th Cir. 1969)

Shapley v. Wolff,
       568 F.2d 1310 (9th Cir. 1978)

Spain v. Procunier
        600 F.2d 189 (9th Cir. 1979)

Supreme Wine Co. v. Distributors of New England,
        198 F.Supp. 318 (D.C. Mass. 1961)

Teterud v. Burns,
        552 F.2d 357 (8th Cir. 1975)

Todaro v. Ward,
        565 F.2d 48 (2nd Cir. 1977)

United States v. Lilly,
        576 F.2d 1240 (5th Cir. 1987)

United States v. Savage,
        482 F.2d 1371 (9th Cir. 1973)

Weathers v. Peters Realty Corp.,
        499 F.2d 1197 (C.A. 6 Ohio 1974)

Whirl v. Kern,
        407 F. 2d 781 (5th Cir. 1979)

Williams v. Edwards,
        547 F.2d 1206 (5th Cir. 1977)

Wolff v. McDonell,
        418 U.S. 539 (1974)

Wofish v. Levi,
        573 F. 2d 118 (2nd Cir. 1978)


STATUTES

Federal Rules of Procedure
        Local Rule 1248

California Administrative Code,
        Title 15 §1081 42 U.S.C. 1983

United States Constitution, Art. III

Edgar Lee Warren
35 County Center Dr
Oroville, CA 95965

CONFIDENTIAL
Legal Mail,
Federal Mail,
Federal Court

**BUTTE COUNTY JAIL INMATE**



USA 41

Office of the Clerk, U.S.
District Court, Northern
District of California
450 Golden Gate Avenue
San Francisco, California
94102

RECEIVED

08 JUN 26 PH 12:43

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA